UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY W. SHORKEY,

    Plaintiff,                          CIVIL ACTION NO. 13-14237

  v.                                DISTRICT JUDGE JOHN CORBETT O'MEARA
                                       MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

## II. REPORT

### A.    Introduction and Procedural History

Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits on November 22, 2010, alleging that he had become disabled and unable to work on November 10, 2010, at age 40, due to back, neck and arm pain. Benefits were denied by the Social Security Administration. A requested de novo hearing was held on March 20, 2012, before Administrative Law Judge (ALJ) Kathleen Eiler.

The ALJ found that the claimant retained the residual functional capacity to perform a limited range of sedentary work providing a sit-stand option with no exposure to vibrations or workplace hazards. Claimant was also found incapable of crawling or climbing ladders, ropes and scaffolds. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 41 years old at the time of the administrative hearing. He had been graduated from high school and had been employed during the relevant past as a carpenter, machinist, truck driver, and treating plant supervisor (TR 54). Claimant alleged disability commencing in November 2010, as a result of severe pain affecting his low back, left leg and upper extremities (TR 39). Pain medication proved ineffective, and caused such side-effects as poor vision, concentration problems and impaired memory (TR 42, 45-46). Claimant estimated that he could sit for perhaps 20 minutes, stand 15 minutes, and walk a quarter of a mile before needing to rest (TR 40-43). Plaintiff had difficulty caring for his personal needs, but he was able to cook, wash dishes, do the laundry, and perform some household chores (TR 43-45). Claimant was also able to drive an automobile, but he needed to take frequent breaks to help relieve his back pain (TR 50).

A Vocational Expert, Jessica Christensen classified Plaintiff's past work as light to medium, unskilled activity (TR 54). The witness testified that there were no jobs for claimant

to perform if his testimony were fully accepted[1] (TR 55). If he were capable of sedentary work, however, there were numerous unskilled assembly, inspection and surveillance system monitoring jobs that he could perform with minimal vocational adjustment (TR 55). These jobs provided a sit-stand option where he could alternate positions at will so long as he was not off task more than 10 percent of any workday. He would never be required to climb ladders, ropes or scaffolding. There would be no need to do any crawling, and he would not be exposed to vibrations or workplace hazards (TR 54).

### B. ALJ's Findings

The Administrative Law Judge found that Plaintiff was impaired as result of degenerative disc disease of the lumbar spine, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's back pain limited him to jobs that allowed a sit-stand option where he could alternate positions at will so long as he was not off task more than 10 percent of any workday. He would not be exposed to vibrations or workplace hazards. There would be no need to do any crawling, or the climbing of ladders, ropes or scaffolds. Nevertheless, he found that the claimant retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 22-30).

### C. Standard of Review

---

[1]The witness opined that, if claimant needed to take two unscheduled breaks every day lasting at least 15 minutes to relieve his pain symptoms, all work activity would be precluded (TR 55).

3

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

**D.  Discussion and Analysis**

I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of

sedentary work providing a sit-stand option[2] where he would not be exposed to vibrations or workplace hazards. Contrary to Plaintiff's assertion, the medical evidence does not support his allegation of totally disabling joint pain. The ALJ's decision was consistent with the specific limitations imposed by examining physicians.

The medical evidence reveals that claimant's spinal condition did not cause totally disabling functional limitations. A treating physician, Dr. Schell, found that Plaintiff had 5/5 strength in his quadriceps, and that he did not suffer from any neurological deficits (TR 318-319). Upon the recommendation of Dr. Schell, the claimant underwent physical therapy, instead of surgery, to help relieve his joint pain. Treatment notes reveal that Plaintiff enjoyed good results from the therapy. Claimant reported in April 2011, that he went long periods without any sharp pains, and that he was able to walk up to two miles (TR 25, 291). Plaintiff later acknowledged that he was able to go hunting and carry a dead deer out of the woods (TR 367).

The clinical findings of two other examining physicians of record also reveal that claimant's joint pain was not totally disabling. Dr. Lazzarra, an examining physician, reported that Plaintiff had only mild difficulty getting on and off the examining table. Claimant was able to heel to toe walk, and could squat without too much difficulty (TR 248).

---

[2]Plaintiff challenges the ALJ's sit-stand option because she did not specify the length of time that he could sit or stand at any one time (Plaintiff's Brief in Support of Summary Judgment at pp 6-8). However, the ALJ found that Plaintiff could perform jobs that allowed him to sit or stand as much as he needed as long as he was not off task more than 10% of the work day (TR 23). The hypothetical question posed to the vocational expert included this limitation on claimant's ability to sit for prolonged periods. Nevertheless, the VE identified jobs that allowed a hypothetical individual to work with that type of sit-stand option (TR 54-55). I suggest that this argument lacks merit.

Dr. Lazzarra did not observe any evidence of joint laxity, crepitance, or effusion. A straight leg raising test was negative (TR 248). Moreover, Plaintiff's motor strength and muscle tone were normal, and his reflexes were 2+ and symmetrical (TR 248). The doctor added that claimant walked with a wide based and guarded gait, but that he did not need an assistive device to walk (TR 249). Dr. Lazzarra opined that Plaintiff's degree of impairment was just "mild to moderate", and that he had a fair prognosis (TR 249).

Another examiner, Dr. Chakravarthi, found that claimant's symptoms were not traumatic, that his spinal degeneration was mild, and that he did not need surgery (TR 374). Significantly, the doctor concluded that he could not support Plaintiff's request for continuing disability benefits. Instead, Dr. Chakravarthi believed that the claimant likely required job retraining, rehabilitation, and light-work duty (TR 25, 374).

Contrary to Plaintiff's assertion, I suggest that there is no objective medical evidence suggesting that his affective disorder was a severe impairment causing serious limitations in his ability to perform basic work activities. Notably, mental health records showed that claimant only started treatment because his disability attorney recommended that he do so (TR 302). Moreover, as the ALJ noted, mental health professionals observed that Plaintiff was "desperate to work", that he could manage "despite his back pain", and that he engaged in some work activity after his onset date (TR 27, 385, 387). Mental health therapy apparently helped since he told examiners that he was sleeping better, and that his mood was less stressed (TR 395-396). While Plaintiff points to the fact that he was prescribed medications, that fact, standing alone, does not mean that he had a severe affective disorder

that warranted limitations in his RFC assessment[3]. The ALJ took into consideration claimant's objectively proven functional limitations by restricting him to jobs that allowed a sit-stand option where he could change positions at will, did not require any crawling or climbing of ladders, and no exposure to vibrations or workplace hazards.

Plaintiff relies heavily upon the fact that Dr. Schell characterized Plaintiff's back pain as "problematic and disabling" (TR 392). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Schell offered little objective evidence during the relevant period to support his statement of disability[4], his opinion need not have been given any special weight. Miller v.

---

[3]Plaintiff also asserts that the ALJ gave limited weight to his GAF score of 50 (See Plaintiff's Brief in Support of Motion for Summary Judgment at pp 11-13). A GAF score does not reflect a clinician's opinion of functional capacity, and, therefore, an ALJ is not required to consider it when determining a claimant's ability to work. Howard v. Commissioner, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ is not required to consider GAF score in assessing residual functional capacity).

[4]The ALJ rejected the doctor's disability opinion, setting forth persuasive reasons for doing so (TR 25, 27). The ALJ expressed concern about the lack of medical documentation to support the opinion during the relevant period. Dr. Schell did not explain his conclusion that Plaintiff's back pain was disabling and problematic, but simply mentioned it in a treatment note describing an epidural injection (TR 392). Furthermore, Dr. Schell's opinion was inconsistent with another treatment note indicating that he deemed conservative treatment appropriate for Plaintiff's back problem (TR 318). This suggested to the ALJ that Dr. Schell's disability statement was prepared for the sole purpose of helping the claimant qualify for benefits. Indeed, it appears the doctor's opinion was primarily based on Plaintiff's subjective complaints, rather than the objective medical evidence.

Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments[5], the Vocational Expert testified that there were numerous unskilled assembly, inspection and surveillance system monitoring jobs that he could perform with minimal vocational adjustment (TR 55). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

---

[5]Contrary to Plaintiff's assertion, the ALJ's hypothetical question to the vocational expert was not flawed because it did not include all his medically corroborated complaints. While Plaintiff contends that the hypothetical question did not account for his inability to sit or stand for prolonged periods, the ALJ accounted for these problems by restricting Plaintiff to sedentary work that provided a sit-stand option "at will" (TR 27). Plaintiff has not shown that his back condition would cause greater limitations.

8

### III.     REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: September 12, 2014                      United States Magistrate Judge